Good morning. May it please the Court, my name is Kathleen Holt and I am here on behalf of Mr. Frohm. I'd like to reserve two minutes of time for rebuttal. Mr. Frohm filed an application for Social Security Disability Benefits when he was 49 years old. He's going to be 61 this year. And this case came before this panel six years ago this month, the same case with the exception that Judge Tallman is with us today instead of Judge Reinhardt. The case was remanded at that time to a different Administrative Law Judge for a de novo review of the case. The Administrative Law Judge that heard the case several years ago, the last Administrative Law Judge, determined that there was substantial gainful activity in the record. This was an issue that did not come up the first time that the case went before an Administrative Law Judge. Additionally, the most recent Administrative Law Judge found that there were several issues that would lead to his decision that there was no medical impairments in the record that would meet the standard of disability. I'd like to address those medical issues first and then the substantial gainful activity for the Court. At step two of the sequential evaluation process, an Administrative Law Judge is to find whether or not there is an impairment that is of a severity to meet a de minimis listing. In other words, if the judge finds at step two that the issue is of an impairing level, then he should discuss whether or not there is an impairment. He should discuss that in the remainder of the sequential evaluation process. Is part and parcel of that evaluation at step one a question of whether or not your client could find enough substantial gainful activity or engage in substantial gainful activity to earn a sufficient amount of money so that the ALJ would conclude that he was not impaired? Is that where the concern arises over where he was getting work from and what the source was? Certainly, and I'm happy to address the substantial gainful activity issue first, as it is a step one impairment. If you are engaging in substantial activity, the consideration is not just the amount of money that you make, but the activity, the amount of activity that's involved. In Mr. Fromm's case, he was having intermittent activity. He was attempting to go back to work. He had, as the record will show, he had passed relevant work that was, in this case, relevant to the fact that he was a fire alarm systems engineer. And so when he could pick up a case on a contract here and there, he could provide that service. But that gets us to where I was going with my questioning. Were there concerns that the ALJ had as to whether Mr. Fromm had been reporting all of the income that he received so that the ALJ had a question as to whether he actually might have done more work for which he received compensation than what Mr. Fromm was admitting? Correct, and that arose as a question for the 1998 earnings record. Because he had one job, he had multiple jobs in particular that were indicated in the record. And the judge, the administrative law judge, wanted to know how much money was made that year. And so Mr. Fromm provided the 1998 tax return. We provided that after post-hearing, as he requested it. And for whatever reason, as happens oftentimes with social security cases, the evidence didn't make it to the file. And so when the decision was issued with no mention of the 1998 tax return, which in and of itself was demonstrative of the fact that there was no... But does that get you there? I mean, the concern, as I read the record, I think the ALJ used the term that he was earning income sub rosa, which I read to mean under the table. If that's the case, I wouldn't expect to see that in his 1998 tax return. Well, there's nothing in the record to support the fact that he might have been making money under the table. There's no substantial evidence at all. There's no evidence in the record. How I read the ALJ's concern was he had a two-week job apparently installing security cameras at a store in Seattle, and he earned $10,000 from two weeks' worth of work. And then he was trying to get similar work at Fort Lewis. So as I read the ALJ's concern was you get a few of those jobs making that kind of money in that short a period of time. But looking at his 1998 tax return showing adjusted gross income of $2,517, something's not adding up here. Right, because the $10,000 that he earned for that two-week job was reduced... It was a gross amount that was reduced by the fact that the equipment, the alarm cameras and equipment, ran about $8,000. So there was a reduction in the fact that there was a $10,000 payout. But it wasn't going all as income to him. What about income from all the LDS churches that he was inspecting? He did $200. It was $200 per inspection, and he was performing approximately 12 inspections a year. But that was just one or two years. I believe that was 2001. Okay, because I didn't see that reported in the 1998 return. Right, because that wasn't in 1998. And there isn't anything else in the record that would suggest that he's malingering or that he hasn't been telling the truth or that he is receiving information. I'm inclined, tentatively, to agree with you on the substantial gain of the SGA. But I'm concerned that later on, even if we show that, that that's not provable against him. His own treating physician doesn't help him out very much. He basically says he's engaged in drug-seeking activity. There are some fairly positive physical reports from his own treating physician. Why is the ALJ to be ignored when he says, you know, I just don't see that there's enough evidence in the record, even from your own treating physician, that should oblige me to find that there's disability here? Okay, let me address the first issue, which was the drug-seeking. Mr. Fromm, and even the medical expert at the first hearing, testified that he was taking massive amounts of pain medication. The drug-seeking came many, many years, and we're looking at a record that spans over 12 years here. The drug-seeking came many years later, after he had become addicted to taking oxycodone and morphine and Percocet, and there was so much use of that drug that led him, which is another issue that the judge didn't discuss, about the side effects of medication, the lack of concentration that he had, the drowsiness. And as far as his own treating physicians, Dr. Tauben and Dr. Weinstein, who had treated him for many, many years, supported his claim. But Tauben was the one who cut him off of prescriptions after he altered one. That's correct. That's correct. He did. And rightly so. But as far as his activity goes, Mr. Fromm was very clear in the record that about a third of the time, he was able to be fairly functional with his back. There were another two-thirds of the time that were difficult for him, and under the standard of Social Security, you have to be able to sustain regular and continuous work activity. Under Social Security ruling 96AP, that's a requirement of a job, is to be able to hold it for eight hours a day, five days a week, and he was unable to do that. The judge also did not address the cervical spine issues that were in the record throughout this process. There are bulging discs, stenosis, impingement, there's all kinds of objective medical evidence that the judge simply didn't discuss. And because there is evidence that his arms and his shoulders and his hands were impaired by the cervical issue, that should have been discussed by the administrative law judge. Thank you. Good morning, Your Honors. Thomas Ellsbury for the Commissioner. This is, first and foremost, an SGA case, a substantial gainful activity case. There is overwhelming evidence of under-the-table work through Mr. Fromm's own testimony. To counter one of the assertions just made by opposing counsel, that there were two inspections during 1998 for $200 each, in August or in January 1999 at his first hearing, Mr. Fromm testified that there were two inspections. He performed a safety inspection on 12 different buildings for the latter day saints. And in looking at the 1998 return, is there any evidence that he reported any of that income? Looking at his 1998 return, it's hard to establish where that income came from. I think what's significant about the 1998 return, which was not before DLJ and there was no evidence that it was submitted to DLJ, it goes counter to Mr. Fromm's argument. It shows $2,117 after all the expenses. Now let's look at the earnings report for Mr. Fromm. Zero. Zero earnings in 1998, zero earnings in 1999, zero earnings in 2000, and zero earnings in 2001. Yet by his own testimony, he talks repeatedly about working throughout 1998, 1999. Well, 1999 is less clear. But 2001, he refers back to 2000 as doing work as an electrician. In December 2001, he reported inspecting 60 buildings a year. In 2001, his earnings were zero. I assume he operated a sole proprietorship, so all of this should have flowed through to his personal income taxes. As a self-employed individual, it would show on his earnings. And he would have to make the payments to Social Security on a quarterly basis if he were being honest and earning all this money? I believe so. As a self-employed individual, I believe you're responsible for reporting your taxes and your income. And I don't have the citation before me, but I believe our regulations specifically address that. The issue of whether the ALJ's step one decision is supported by substantial evidence. The evidence is replete, and I've detailed it in my brief. His own testimony to both ALJs, his own reporting to his treating physician, he was engaged in work. During the four years where his earnings show zero income. The tests that Appellant argues should be used to evaluate the amount of income are unavailable. If the income is not reported, the ALJ can't make it appear. And again, by his own testimony, he was working. Whether it was a little bit or a lot, we don't know. But we know he was working, and we know his earnings are zero, as they are reported. Further, Mr. Fromm raised the point that this is a first-time issue, that it wasn't before this Court, the one that was previously remanded. And that's true. The previous ALJ decision was in April 1999. The real significant income we're talking about that was reported by Mr. Fromm was in December 1998. The remaining income that he reported to his physician, Dr. Tauben, and that he reported in the 2005 hearing, hadn't occurred yet. Circumstances changed. There was a lot more work being reported by Mr. Fromm during the period after the ALJ decision. And, in fact, in the first ALJ decision, substantial gainful activity was an issue. The ALJ noted the earnings in December 1998, and, as did the ALJ in this case, continued on with the evaluation because there wasn't enough evidence. In the 1999 decision, it remained that way. There was insufficient evidence for the ALJ to infer. In the 2005 hearing and decision, that's not the case any longer. We have a lot more testimony from Mr. Fromm, both administrative hearing testimony and reporting to his physician, that there's been a great deal more work performed. And we have three more years of zero earnings reported. The inference is clear. The ALJ's conclusion that there must be under-the-table earnings is supported by the evidence. He details it in great detail. I would, if you have no further questions about the issue. Any precedents that would shed light on the relationship between what's required for substantial gainful activity and a conclusion that someone's not reporting their income? Is there a standard? Yeah, or making sub-ROSA income. So assuming that we accept that he wasn't reporting earnings, what does that tell us about how we determine whether there's substantial gainful activity? The very first step requires a claimant to prove that he is not engaged in SGA. The burden is solely upon the claimant at that point to prove he's not engaged in SGA. The ALJ has a duty to develop. The ALJ's decision must be supported by substantial evidence. Substantial evidence here is the testimony when there's nothing to be gained to his treating physician that I'm working. The testimony at the hearing, okay, I worked here a little bit there. At one point, only two buildings after 1998. Then it becomes 12 buildings in 98 and 60 buildings in 2001. The incredibility of Mr. Fromm's own statements regarding whether he worked and how much he worked is the substantial evidence supporting the ALJ's inference, his conclusion that the record infers there was activity unreported. Beyond that, I believe the ALJ is powerless to develop the record any further regarding specific amounts because by its definition it's not been reported. Excuse me. I think it bears as well on the credibility finding, which Judge Fletcher, you mentioned a bit. There were many things that the ALJ considered because he did consider it as an alternative. Sequential evaluation, finding he could do his past relevant work. And in the credibility, he looked at the drug seeking. He looked at the inconsistencies in the reporting, which we've been talking about in the different contexts within step one. But now in the credibility finding, he's saying one thing to his doctor. He's saying one thing to the ALJ, and the record is showing something else. Zero earnings despite reported work, more extensive work than previously cited or reported. Those are all acceptable bases to obtain the credibility of the subjective testimony of a claimant. And if there are no further questions. I see none. Thank you. Thank you. You've saved a little time. Thank you. With regards to the earnings record, I can't answer why the earnings did not appear on the Social Security earnings record. When a person who is a sole employer or an employee, a person who has their own business, reports their earnings through their tax return, it typically makes its way to the earnings record on Social Security. That's how the process works. I don't have anything to cite for that, but I can tell you from my own experience. Yeah, and you do that on a quarterly basis. You basically do withholding, and you make payments that go to the Internal Revenue Service for your income tax liability and withhold amounts that go to the Social Security Administration for FICA and all of the other things. And the concern here is that if the administration has no record of having ever received any money from him, then the ALJ could infer that he didn't make those payments, and that would be consistent. Which happens in many cases. And what happened, then the ALJ gives the claimant the ability to kind of resurrect that or to fix that or to say, can you show that you provided this to the IRS? This happens quite often where that rehabilitation happens. The second ALJ asked for the 1998 tax return, the issue was clearly flagged for the claimant who was represented by counsel. At that point, isn't the burden on you to say to your client, okay, give me all your financial records so that we can show the ALJ that you're being honest about all this? Well, and we provided what the judge asked for in terms of that record. If we had realized that this was going to be such an issue, that this man, I'm not sure where the 60 buildings came in, but clearly he was engaged in some activity, and he said 12 buildings that he's been inspecting. But the bigger issue is if there's no substantial evidence in the record to support this, where do we draw the line in terms of anyone who is attempting to work? If you're attempting to work, you get penalized by the fact that you're not even just trying to get out there and do an unsuccessful work attempt, as it were. The evidence doesn't support the fact that he was engaging in substantial activity, except on very intermittent basis. And the record is replete where he says to his doctors, I could work up to four hours a day, and then I'd have to rest for two days. Okay. Thank you. Thank you. Thank both of you for your helpful arguments. Frome v. Astor is now submitted for decision. We'll take a break for about 15 minutes.
judges: Fletcher, Gould, Tallman